AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

Your affiant in this matter, Detective Timothy Palchak has been a police officer with the Metropolitan Police Department since 1994. In 2000 your affiant was promoted to Detective Grade 2 and is currently serving at this rank.  During your affiant's twelve year tenure with the Metropolitan Police Department he has been assigned to the Third District Patrol Operations, Prostitution Enforcement Unit, and is currently assigned to the Northern Virginia Regional Internet Crimes Against Children Task Force. Your affiant has received training in the following subject areas: Family Violence and Child Protection, Basic Investigator Course, Interview and Interrogation, Sexual Assault Nurse Examination, Children's Hospital Conference on Responding to Child Maltreatment, Child Abuse and Child Exploitation Investigation techniques, undercover Internet Crimes Against Children (ICAC) investigations course and Image scanning. Your affiant has made numerous arrests and interviewed numerous victims, witnesses, and suspects.  Your affiant has participated in numerous child abuse investigations, child sex abuse investigations and ICAC investigations.  In November of 2005 the affiant received cross designation training from Immigration and Customs Enforcement (ICE).

On Friday, May 19, 2006, your affiant, a detective with the Metropolitan Police Department, was acting in an undercover capacity as part of a multi-jurisdictional Internet Crimes Against Children (ICAC) Task Force.  Detective Palchak was operating out of the Metropolitan Police Department's Youth Investigations Branch in Northeast, Washington, D.C.  On May 19, 2006, an individual using the screen name "xxxxxxxxxxxx" initiated contact with Detective Palchak, who was using the screen name "xxxxxxxxxxxx."  Detective Palchak identified himself as a thirteen-year-old female residing in the District of Columbia.

The defendant, who was using the screen name "xxxxxxxxxxxx," identified himself as a thirty-eight-year-old male who works with the U.S. Navy and resides in Washington State, but who was in Gaithersburg, Maryland on a business trip.

The defendant initiated three separate chat conversations in a private Yahoo chat room during the course of the day, and conversed with "xxxxxxxxxxxx" through instant messaging for over three hours that day.  The defendant identified himself as an

employee of the U.S. Navy and sent "xxxxxxxxxxxx" photos of himself in a Navy uniform. During the course of the conversation, the defendant asked "xxxxxxxxxxxx" if she wanted to be "licked" or if she wanted "to make love." "xxxxxxxxxxxx" indicated to the defendant that she had never engaged in sexual intercourse with anyone before. The defendant asked her several times where her mother was, and she replied that her mother was at work, and that her mother would not be coming home straight from work because she had plans to go out with friends that night. The defendant stated that he was disease-free and that she did not have to worry about getting pregnant because he was "fixed." The defendant then made arrangements to meet "xxxxxxxxxxxx" at the Rhode Island Metro station in Washington, D.C. at 8:00 p.m. The defendant told "xxxxxxxxxxxx" that he would be wearing a blue polo shirt, blue jeans, and a blue and yellow jacket. The defendant asked "xxxxxxxxxxxx' to wear something that would make her look older, and suggested that she not wear panties underneath her clothing. The defendant stated that he would meet her in the metro station where the metro passes are sold.

On May 19, 2006 at approximately 2010 hours, the defendant was observed exiting a metrorail train at the Rhode Island metro stop and followed by law enforcement agents. The defendant was observed at the location where metro passes are sold and was stopped and placed under arrest. The defendant was wearing the identical clothing that he indicated to "xxxxxxxxxxxx" that he would be wearing. The defendant was advised of his <u>Miranda</u> rights and after waiving his rights in writing, he gave a videotaped statement to Detective Timothy Palchak. The defendant admitted that he did travel from Maryland to Washington, D.C. to meet a thirteen-year-old female with whom he had engaged in internet chatting and who he knew as "kali". He described the female as a young blonde with long hair. During the course of the internet contact with the defendant, Detective Palchak forwarded a picture of Xxxxxxxxxxxx(a blonde female child approximately thirteen years old) to the defendant through Instant message picture sharing.

The defendant waived his Miranda rights and signed a consent to search waiver allowing members of the Metropolitan Police Department to search his hotel room in Gaithersburg, Maryland. The defendant authorized members of the Metropolitan Police Department to utilize his magnetic key card to enter his room at the Holiday Inn in Gaithersburg, Maryland.

On May 19, 2006 Detective Miranda entered the defendant's hotel room and seized one Toshiba laptop computer, LAN # 009096-CB754C. Detective Miranda also seized assorted paperwork, and one DVD.

**DEFINITIONS/TERMS**

    A.   "Computer, as used herein, is defined pursuant to 18 U.S.C. 1030(e)(1), as an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

    B.   "Computer hardware, as used herein, consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

    C.   "Computer software, as used herein, is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

    D.   "Computer-related documentation, as used herein, consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, computer software, or other related items.

    E.   "Computer passwords and data security devices, as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code

that creates "test keys or "hot keys, which perform certain pre-set security functions when touched.  Data security software or code may also encrypt, compress, hide, or "booby-trap protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

   F.  " Internet Protocol address or "IP address refers to a unique number used by a computer to access the Internet.  IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the Internet.  IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.

   G.  The terms "records, "documents, and "materials, as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

   14.  Yahoo, is a commercial computer service, also known as a commercial bulletin board, offering subscribers the ability to communicate online with other individuals through chat rooms, e-mail and/or instant messaging.

   A.  A chat room is an electronic meeting room provided by AOL and other similar services, which allows Internet users to have group conversations.  For example, within the Yahoo network there are two categories of chat rooms, they are Yahoo created chat rooms and Yahoo member-created chat rooms.  Within these two categories exist various general topic areas and within these topic areas exist the various chat rooms.

   B.  E-mail is a popular form of transmitting messages and/or files in an electronic environment between computer users.  When an individual computer user sends e-mail, it is initiated at the user's computer, transmitted to the recipient's mail server

and then transmitted to its final destination. A server is a computer that is attached to a dedicated network and serves many users. An e-mail server allows users to post and read messages and to communicate via electronic means, as well as attaching and sending various types of files including graphic files.

    C.    "Instant messaging" (IM) is real-time typewritten conversation between individuals, much like an oral conversation, and is used to conduct one-on-one conversations.

15. To communicate using Yahoo, each subscriber must have access to a computer which communicates through a modem connected to telephone or cable lines with the central computer system located in California. Each subscriber can communicate with other Yahoo users via e-mail or in real time through chat rooms, private chat rooms, or instant messages when the other subscriber is also online. Within the system, text messages and graphic images (such as photographs) can be sent to a subscriber, or to any person with an Internet e-mail address. Both text and graphics files can be saved to the computer's hard drive or other electronic media for access and printing at any time.

16. Another feature offered to AOL subscribers is a "buddy list." Through this feature an Yahoo subscriber can maintain a list of individual Yahoo screen names that they may wish to have contact with. This feature allows an individual to determine when their "buddies" are online.

17. Every computer connected to the Internet must have a unique address known as an IP (Internet Protocol) address. The IP address is a numeric address written as a set of four numbers separated by dots, for example 130.102.42.17. The address provides a unique identification of a computer and the network it belongs to.

**Items to be searched for, seized and examined**
A Toshiba laptop computer LAN # 009096-CB754C. Any and all documents, notes, writings,recordings,photographs, items, objects or materials relating to Xxxxxxxxxxxx (who is further described in the affidavit).

Records or items which evidence ownership or use of computer equipment found in the above Hotel, including, but not limited to, correspondence, sales receipts, and bills for Internet access relating to any Internet service provider, all handwritten notes and handwritten notes in computer manual

Keys, storage combinations, passwords, and paperwork which indicate any other storage containers or facilities that could contain evidence of collection, advertising, transport, distribution, receipt, or possession of child pornography.

Envelops, letters, documents, and other correspondence, including but not limited to, electronic mail, chat logs, IRC logs, ICQ logs, all other usage records for distributed file sharing technologies, and electronic messages, offering to distribute and receive visual depictions of minors engaged in sexually explicit conduct, or to show evidence a sexual interest in minors or desire or motive to advertise, distribute, transport, receive, collect and posses visual depictions of minors engaged in sexually explicit conduct.

**CONCLUSION**

Based on the aforementioned factual information, I Detective Palchak respectfully submits that there is probable cause to believe that an individual who was staying at the Holiday Inn, # 2 Montgomery Village Ave. Gaithersburg, Maryland Room # 442 has violated 18U.S.C. 2423(b) I, therefore, respectfully request that the attached warrant be issued authorizing the search and seizure of the above listed items.

                                                  Detective Timothy Palchak
                                                  Metropolitan Police Department

☐☐☐☐☐ ☐☐☐ ☐☐☐☐☐☐☐☐☐☐ ☐☐☐☐☐☐ ☐☐

☐☐☐☐ \_\_\_\_\_ ☐☐☐ ☐☐ _____ 2006.

_____
☐☐☐☐☐☐ ☐☐☐☐☐☐ ☐☐☐☐☐☐☐☐☐☐☐ ☐☐☐☐☐

AFFIANT'S SIGNATURE
_____

SUBSCRIBED AND SWORN BEFORE

   ME THIS _____ DAY OF

                                   _____, 20_____.

_____
ASSISTANT UNITED STATES ATTORNEY
 (JUDGE) (DEPUTY CLERK)

Case 1:06-mj-00240-AK    Document 1-2    Filed 05/24/2006    Page 7 of 7